# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISON

| | |
|---|---|
| **MARK SILVA, JR.,**<br>*ex rel.* **MARK ANTHONY SILVA,**<br>c/o FG+G<br>50 Public Square, Suite 1900<br>Cleveland, OH 44113-2205,<br><br>*Plaintiff*,<br><br>v.<br><br>**DONALD J. KREAGER, JR. (#837),**<br>c/o Village of Genoa, Ohio<br>102 E. Sixth Street<br>Genoa, Ohio 43430,<br><br>and<br><br>**OFCR. E. SANDWISCH (#234),**<br>**OFCR. S. GABLE (#228),**<br>**OFCR. A. WEBB (#232),**<br>**SGT. J. MARTIN (#273),**<br>c/o City of Oregon, Ohio<br>5330 Seaman Road<br>Oregon, Ohio 43616,<br><br>and<br><br>**BON SECOURS MERCY HEALTH, INC.,** and<br>**BON SECOURS MERCY HEALTH MEDICAL GROUP LLC,**<br>c/o Corporation Service Company<br>1160 Dublin Road, Suite 400<br>Columbus, OH 43215, and<br>**MERCY HEALTH - ST. VINCENT MEDICAL CENTER LLC D/B/A MERCY HEALTH — ST. CHARLES HOSPITAL,**<br>2213 Cherry Street<br>Toledo, Ohio 43608, and<br>**JOHN AND JANE DOES 1-10,**<br>2600 Navarre Avenue,<br>Oregon, Ohio 43616,<br><br>*Defendants*. | Case No.<br><br>Judge<br><br><br><br><br><br>**COMPLAINT & JURY DEMAND** |

**INTRODUCTION**

1. With this Complaint, Plaintiff **Mark Silva**, **Jr. ("Mark Jr."),** in his role as guardian of **Mark Anthony Silva ("Mark")**, brings this civil rights action.

2. In the late hours of October 15, 2023, Mark Silva, a 51-year-old man with a long history of mental illness, was suffering from an altered mental state. He was paranoid, confused, delusional, and unable to respond rationally. Though he did not present a threat and remained handcuffed the entire time, Defendants Genoa Police Department Officer Donald J. Kreager and Oregon Police Department Officers Sandwisch, Gable, Webb, and Martin all used force against Mark—tasing him, pushing him face-down on his stomach, kneeing him, piling on him, yanking his handcuffed arms above his head, using their weight to press down on Mark's back, neck, head and arms, and pulling his shirt collar around his neck—until he went silent and stopped moving. Defendants Officers stood by without rendering aid to Mark, who was unconscious on the ground.

3. When personnel from St. Charles Hospital responded, they also failed to provide medical intervention with appropriate urgency, and more time elapsed before anyone began CPR.

4. As a result, Mark Silva suffered severe anoxic brain damage, acute respiratory failure, and cardiac arrest, rendering him neurologically noninteractive and nonresponsive.

5. This action seeks accountability for violations of Mark Silva's constitutional rights. Plaintiff also seeks accountability, damages, and other relief under Ohio law.

**PARTIES**

6. **Plaintiff Mark Silva, Jr. ("Mark Jr."),** was appointed guardian of the person and estate of his father, **Mark Anthony Silva ("Mark")**, indefinitely and without limitation, by the Ottawa County Probate Court, Case No. 20242016, on February 20, 2024. Mark Jr. will continue to serve as guardian of his legally incompetent father unless and until that power is revoked. Mark Jr. is a resident of the City of Toledo in Lucas County, Ohio.

7. **Defendant Donald J. Kreager (#837)** was, at all times relevant to this complaint, an employee of the Village of Genoa, Ohio, working as a police officer in the Genoa Police Department. At all times relevant to this complaint, Defendant Kreager acted under color of law. He is sued in his individual capacity.

8. **Defendants E. Sandwisch (#234)**, **S. Gable (#228)**, **A. Webb (#232)**, and **Sergeant J. Martin (#273)**, were, at all times relevant to this complaint, employees of the City of Oregon, Ohio, working as police officers in the Oregon Police Division. At all times relevant to this complaint, Defendants Sandwisch, Gable, Webb, and Martin acted under color of law. They are sued in their respective individual capacities.

9. **Defendants John and Jane Does 1-10** were, at all times relevant to this complaint, employed by and/or acting as agents of the St. Charles Hospital Defendants, defined below, and acted within the scope of their employment and/or agency with the St. Charles Hospital Defendants. These John and Jane Does are St. Charles Hospital personnel who responded to Mark Silva on the grounds of St. Charles Hospital and are visible in police body-worn camera footage, including, without limitation: one man with a shaved head and wearing an RN badge, who talks about a "C-Collar"; three other men, one with close-cropped dark hair, one with short brown hair, one with close-cropped lighter hair, all with stethoscopes around their necks; one woman with glasses and hair in a ponytail; two woman with short light blonde/white hair; one woman wearing blue scrubs, grey jacket, glasses and brown hair; two women standing in a hallway, among others.[1] John and Jane Does 1 through 10 are sued in their individual capacities.

---

[1] Records currently available to Plaintiff do not identify John and Jane Does 1 through 10. Plaintiff will file a Motion for Leave to Propound Early Discovery to identify these Defendants.

10. **Defendant Bon Secours Mercy Health, Inc.** is a Maryland Corporation doing continuous business in Ohio with a principal place of business at 1701 Mercy Health Place Cincinnati, Ohio 45237.

11. **Defendant Bon Secours Mercy Health Medical Group LLC** is an Ohio corporation doing continuous business in Lucas County, Ohio with a principal place of business at 1701 Mercy Health Place Cincinnati, Ohio 45237.

12. **Defendant Mercy Health - St. Vincent Medical Center LLC D/B/A Mercy Health — St. Charles Hospital** is an Ohio corporation doing business in Lucas County Ohio, including at 2600 Navarre Avenue, Oregon, Ohio 43616, with a principal place of business at 2213 Cherry Street, Toledo, Ohio 43608.

13. Defendants Bon Secours Mercy Health, Inc., Bon Secours Mercy Health Medical Group LLC, and Mercy Health - St. Vincent Medical Center LLC D/B/A Mercy Health — St. Charles Hospital are collectively referenced herein as the "**St. Charles Hospital Defendants**."

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq*; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); and the Constitution of the United States.

15. This Court has supplemental jurisdiction over all state law claims in this complaint pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District under 28 U.S.C. § 1391(b). Plaintiff and Defendants reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claim also occurred in this judicial district.

## FACTUAL BACKGROUND

17. On or about October 15, 2023, **Defendant Ofcr. Donald J. Kreager** and a Clay Township police officer stopped **Mark Anthony Silva ("Mark")** for traffic violations in Genoa, Ohio. The officers handcuffed and detained Mark.

18. It was immediately apparent that Mark was experiencing an altered mental state. He was paranoid, confused, delusional, and could not respond coherently to questions by police.

19. Mark's mental health history was known by local police. He was known to be delusional and paranoid, including seeing people who were not there.

20. Mark's passenger explained that Mark was delusional and had been talking to people who were not there. While being questioned by the officers, Mark appeared to be looking at things that were not there.

21. Mark also told the officers that he needed medication and EMTs recommended that he be taken to the hospital.

22. EMTs transported Mark to St. Charles Hospital in Oregon, Ohio. Defendant Kreager followed them.

23. Upon Mark's discharge from the hospital, Defendant Kreager escorted Mark to his police cruiser in the parking lot. Defendant Kreager left Mark's hands cuffed in front of his body during the escort.

24. Mark meandered away from Kreager in the St. Charles Hospital parking lot, still in an altered mental state.

25. Officer Kreager commanded Mark to stop, and deployed his Taser twice at Mark, causing Mark to fall to the ground.

26. At the time, Mark was handcuffed, confused, and incapable of responding rationally, but was not fleeing and did not pose a threat.

27. Defendant Officer Kreager yanked Mark to his feet and pulled him toward the ambulance bay of St. Charles Hospital.

28. At the hospital sidewalk, Mark stopped walking. Defendant Kreager responded by taking Mark down onto the sidewalk with force.

29. Then Officer Kreager yelled, "Stop it! Stand up!" Mark replied, "I can't."

30. Officer Kreager requested officer backup and continued to restrain Mark against the ground, pressing on his head, neck, and chest.

31. Mark told Officer Kreager, "I'm gonna die. I'm gonna die." Officer Kreager responded, "No, you're not." Mark continued to shout for help.

32. Kreager pushed down against Mark's chest and neck area. (See Figure 1).



*Figure 1. Ofcr. Kreager presses down on Mark's chest and throat.*
*(Ofcr. Kreager's Body-Worn Camera ("Kreager BWC"), 10/16/23, at 2:18:49 a.m.)*

33. **Defendant Officers E. Sandwisch (#234)** and **S. Gable (#228)** of the Oregon Police Department ("OPD") arrived and joined Officer Kreager in restraining Mark.

34. Officer Sandwisch, while pushing down on Mark's head and back with his hands, delivered knee strikes to Mark's body.

35. Sandwisch then yanked Mark's cuffed wrists over his head and kneeled on his forearm, while Kreager climbed on top of Mark and pushed down on his back. (See Figure 2).

6



*Figure 2. Ofcr. Sandwisch kneels on Mark's forearm as Ofcr. Kreager pushes down.
(Kreager BWC, 10/16/23, at 2:19:42 a.m.)*

36. Officer Kreager, straddling Mark, grabbed and bunched Mark's shirt collar in his hands and pulled it tight around Mark's neck. (See Figures 3, 4, and 5).

37. As Kreager pulled the shirt collar, Sandwisch pressed Mark's head into the pavement and held Mark's hands above his head. Mark made pained noises and Officer Kreager pressed down into Mark's back.



*Figure 3. Ofcr. Kreager grabs and bunches Mark's shirt collar in his hands.
(Kreager BWC, 10/16/23, at 2:20:22 a.m.)*

7



*Figure 4. Ofcr. Kreager pulls Mark's shirt collar.*
*(Kreager BWC, 10/16/23, at 2:20:27 a.m.)*



*Figure 5. Ofcr. Kreager pulls Mark's shirt collar tight around his neck.*
*(Kreager BWC, 10/16/23, at 2:20:30 a.m.)*

38.  **Defendants OPD Officer A. Webb (#232)** and **OPD Sergeant J. Martin (#273)** arrived and joined in restraining Mark while Defendant Kreager remained atop Mark.

39.  With the weight of Defendants Officers on his back, neck, head, and arms, and his shirt pulled tight around his neck, Mark eventually went silent and stopped moving.

40.  Yet Defendant officers continued to hold Mark down, Kreager still on Mark's back, as the other Defendant officers re-cuffed Mark's flaccid arms behind his back.

41.  After Mark went silent, Officer Kreager called his name, but Mark did not respond.

42.  Defendant Officers eventually rolled Mark onto his side, revealing his partially open eyes and blue lips. (See Figure 6). Officer Kreager reacted, "Oh shit."

8



*Figure 6. Mark's face after he is turned over.*
*(Kreager BWC, 10/16/23, at 2:22:36a.m.)*

43. Approximately two minutes after Mark had gone silent, Defendant Officer Kreager asked, "Do you want me to do chest compressions?" No one responded.

44. None of the Defendant Officers attempted to perform chest compressions, begin CPR, or call 911.

45. Medical personnel at St. Charles Hospital were notified about this medical emergency.

46. Personnel from St. Charles Hospital, including but not limited to some of Defendants John and Jane Does 1 through 10, arrived at the place on the hospital sidewalk where Mark lay unresponsive and blue, but they acted without appropriate urgency.

47. Defendant officers rolled Mark back over onto his stomach to remove the handcuffs.

48. Upon information and belief, Defendants John and Jane Does 1 through 10 did not provide first aid or medical intervention, they failed to properly assess Mark's respirations, and they did not begin CPR or respiratory support.

49. Defendants lifted Mark onto a stretcher and wheeled him into the hospital.

9

50. From their starting point on the sidewalk and for the duration of the transport into the hospital, Defendant Officers and Defendants John and Jane Does 1 through 10 did not provide timely or appropriate first aid or medical intervention.

51. Defendant Officers and John and Jane Does 1 through 10 wheeled and/or accompanied Mark through the ambulance bay door. As they entered the hospital, one of these Defendants asked the others, "Is he breathing or not, guys?" Someone responded, "We're not sure."

52. It was only after arrival in a hospital room and situating Mark's bed in the corner that John and Jane Does 1 through 10 finally began first aid and/or medical intervention for Mark.

53. Although John and Jane Does 1 through 10 and/or other St. Charles Hospital Defendants' medical personnel were finally able to re-establish Mark's heartbeat, Mark suffered profound brain damage as a result of the Defendant Officers' policing techniques and Defendants' failures to provide timely first aid and medical intervention.

54. The extended period of cardiac arrest caused by Defendants' actions and inactions caused Mark to enter an unresponsive state, requiring around the clock care. He remains unconscious today, and his injuries are permanent.

55. Defendant Officers, facing the unconstitutional conduct of their fellow officers, failed to intervene to prevent or stop such unconstitutional conduct, despite having the opportunity and means to do so.

56. During these events, Mark Silva had an objectively serious medical need.

57. Defendant Officers knew or should have known that Mark had an objectively serious medical need.

58. During these events, Defendant Officers also knew or should have known that Mark's serious medical needs subjected him to an excessive risk of harm and that failing to timely

provide first aid or medical intervention or to seek provision of the same by medical personnel would pose a serious risk to Mark's health.

59. In failing to take timely action during Mark's cardiac arrest, Defendant Officers ignored serious risks to Mark's health.

60. Throughout the events described in this complaint, Defendants Officers recklessly breached their duties to Mark, failed to act with due care, and caused him injury.

61. Defendants John and Jane Does 1 through 10 likewise had the opportunity and means to prevent or stop the negligent conduct of their colleagues, but failed to do so.

62. Defendants John and Jane Does 1 through 10 and the St. Charles Hospital Defendants breached their duties to Mark, failed to act with due care, and caused him injury. These Defendants breached the standard of care in their conduct relating to Mark.

63. Defendants acted negligently, recklessly and/or with deliberate indifference to the serious medical needs of Mark Silva.

64. Defendants' conduct was the direct and proximate cause of Mark's injuries and damages, including but not limited to conscious pain and suffering and emotional trauma, cardiac arrest, respiratory arrest, anoxic brain injury, acute and toxic encephalopathy, lost chance for treatment and recovery, and more.

65. Mark's injuries were a foreseeable result of Defendants' conduct.

66. All Defendants engaged in the conduct described herein within the course and scope of their employment.

67. Defendants are jointly and severally liable for the injuries and damages described in this Complaint.

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 | Amend. IV & XIV — Excessive Force against Defendant Officers

68. Plaintiff incorporates the above allegations as if fully set forth herein.

69. Defendants Officers Kreager, Sandwisch, Webb, and Gable, and Sergeant Martin, acting under color of law, deprived Mark Silva of clearly established rights, privileges, or immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to, his right to be free from excessive force.

70. Defendants Officers Kreager, Sandwisch, Webb, and Gable, and Sergeant Martin used excessive, unreasonable, and gratuitous force in seizing and restraining Mark.

71. The force used by Defendants Officers Kreager, Sandwisch, Webb, and Gable and Sergeant Martin was a direct and proximate cause of the constitutional violations Mark suffered and of his injuries and damages, described above.

72. Defendants are jointly and severally liable for this conduct.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 | Amend. IV & XIV — Deliberate Indifference to Serious Medical Needs against Defendant Officers

73. Plaintiff incorporates the above allegations as if fully set forth herein.

74. Defendant Sergeant Martin and Defendant Officers Kreager, Sandwisch, Webb, and Gable, acting under color of law, and while Mark Silva was in their custody, deprived Mark Silva of clearly established rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendment to the United States Constitution, including, but not limited to, the right to constitutionally adequate medical care while in pretrial custody.

75. Defendant Sergeant Martin and Defendant Officers Kreager, Sandwisch, Webb, and Gable acted with recklessness and deliberate indifference to Mark's serious medical needs

when they failed to provide Mark with objectively reasonable and constitutionally adequate medical care while in their custody.

76. Defendant Sergeant Martin's and Defendant Officers Kreager's, Sandwisch's, Webb's, and Gable's failure to provide constitutionally adequate care was a direct and proximate cause of the constitutional violations Mark suffered and of Mark's injuries and damages, described above.

77. Defendants are jointly and severally liable for this conduct.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 | Amend. IV & XIV — Failure to Intervene against Defendant Officers

78. Plaintiff incorporates the above allegations as if fully set forth herein.

79. Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable, acting under color of law, deprived Mark of clearly established rights, privileges, or immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to, his rights to be free from excessive force and from deliberate indifference to his serious medical needs.

80. Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable failed to intervene and stop and/or prevent the excessive force employed against Mark by their fellow defendants, and failed to intervene to prevent and/or end their fellow officers' deliberate indifference to Mark's serious medical needs, despite having the means and opportunity to do so.

81. The failure of Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable to intervene was a direct and proximate cause of the constitutional violations Mark Silva suffered and of his injuries and damages, described above.

82. Defendants are jointly and severally liable for this conduct.

### FOURTH CAUSE OF ACTION
### Ohio Law | Assault & Battery
### against Defendant Officers

83. Plaintiff incorporates the above allegations as if fully set forth herein.

84. The actions of Defendant Officers Kreager, Sandwisch, Webb, and Gable and of Sergeant Martin toward Mark both created in him the apprehension of an imminent, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification or privilege.

85. Because Defendants acted in a manner that was reckless, they are not entitled to the immunities set forth in Ohio R.C. § 2744.01 et seq.

86. As a direct and proximate result of Defendants' reckless and offensive touching, Mark Silva suffered injuries and damages, described above.

87. Defendants are jointly and severally liable for this conduct.

### FIFTH CAUSE OF ACTION
### Ohio Law | Reckless Breach of Duty
### against Defendant Officers

88. Plaintiff incorporates the above allegations as if fully set forth herein.

89. At all times relevant herein, Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable had a duty to the public at large, including Mark Silva, to exercise due care and to act in a lawful and reasonable manner and to not act in a willful, wanton, reckless, negligent, or malicious manner. Additionally, as law enforcement officers, Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable had a duty to protect citizens, including Mark Silva.

90. Defendants breached those duties when they failed to exercise due care, failed to protect Mark, caused Mark to suffer unnecessary and preventable injury, and acted in a reckless manner.

91. Because Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable breached these duties of care in a manner that was reckless, they are not entitled to the immunities set forth in Ohio R.C. § 2744.01 et seq.

92. The conduct of Defendants Sergeant Martin and Officers Kreager, Sandwisch, Webb, and Gable directly and proximately caused the injuries and damages suffered by Mark, described above.

93. Defendants are jointly and severally liable for this conduct.

## SIXTH CAUSE OF ACTION
### Ohio Law | Medical Malpractice by John and Jane Does 1 through 10

94. All of the foregoing paragraphs are incorporated as though fully set forth here.

95. Defendants John and Jane Does 1 through 10 owed a duty of reasonable care to Mark Silva, and had a duty to comply with the relevant standard(s) of care in their treatment of Mark.

96. Defendants John and Jane Does 1 through 10 breached their duty to provide medical care to Mark consistent with the relevant standard(s) of care, in violation of Ohio law.

97. Defendants failed to use reasonable care in assessing, evaluating, and treating Mark's serious medical needs, and each Defendant breached their duty of care to Mark.[2]

98. Defendants' conduct directly and proximately caused the injuries and damages suffered by Mark, described above.

99. Defendants are jointly and severally liable for this conduct.

## SEVENTH CAUSE OF ACTION
### Ohio Law | Negligence by St. Charles Hospital Defendants

100. All of the foregoing paragraphs are incorporated as though fully set forth here.

---

[2] Affidavit of Merit by Frank Forde, MD is attached as Exhibit 1.

15

101. The St. Charles Hospital Defendants and their employees and agents owed a duty of reasonable care to Mark Silva and had a duty to comply with the relevant standard(s) of care in their treatment of Mark. Defendants breach those duties.

102. The St. Charles Hospital Defendants negligently failed to ensure that adequate policies, procedures, practices, and customs were in place at St. Charles Hospital to appropriately assess, evaluate, and treat people, including but not limited to people in custody who have serious medical needs, such as Mark Silva.

103. The St. Charles Hospital Defendants have a duty to ensure that the policies, procedures, practices, and customs in St. Charles Hospital concerning medical care are not negligent. Defendants breached this duty.

104. The St. Charles Hospital Defendants had a duty to provide qualified personnel who were adequately trained and supervised pursuant to appropriate policies, procedures, practices, and customs to perform medical services at St. Charles Hospital. Defendants breached this duty.

105. The St. Charles Hospital Defendants and their contractors, employees, and agents had a duty of care to Mark Silva and breached this duty by failing to provide appropriate medical care and treatment under the circumstances.

106. The St. Charles Hospital Defendants are liable under the doctrine of respondeat superior for the negligent conduct of their employees and agents described in this Complaint.

107. Defendants' conduct was a direct and proximate cause of Mark Silva's injuries and damages, described above.

108. Defendants are jointly and severally liable for this conduct.

**PRAYER FOR RELIEF:**

The Plaintiff demands that judgment be entered in his favor on all counts and prays the Court to award the following relief:

a. Compensatory damages in an amount to be shown at trial;

b. Punitive damages against the individual defendants in an amount to be shown at trial;

c. Costs incurred in this action and reasonable attorney's fees; and

d. An award of such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.**

Dated: September 11, 2024

Respectfully submitted,

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
FG+G
35 East 7th Street, Suite 201
Cincinnati, Ohio 45202
T: 513-572-4200 / F: 216-621-0427
jacqueline@FGGfirm.com

Sarah Gelsomino (0084340)
FG+G
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216.241.1430 / F: 216.621.0427
sarah@FGGfirm.com

Charles E. Boyk (0000494)
Andrea R. Young (0096334)
CHARLES E. BOYK LAW OFFICES, LLC
1500 Timberwolf Drive
Holland, OH 43528
T: (419) 241-1395 / F: (419) 241-10731
cboyk@charlesboyk-law.com
ayoung@charlesboyk-law.com

*Counsel for Plaintiff*