## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MARK SILVA, JR.,**

    Plaintiff,

    v.

**DONALD J. KREAGER, JR., et al.,**

    Defendants.

CASE NO. 3:24 CV 1547

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Pending before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint *Instanter*. (Doc. 55). Defendants[1] opposed (Docs. 56, 58), and Plaintiff replied (Doc. 60). Also pending is the parties' Joint Motion to Stay (Doc. 65). For the reasons discussed below, the Court grants both Motions.

### BACKGROUND[2]

This case stems from a traffic stop on October 15, 2023, where Defendant Kreager and an unnamed officer stopped and detained Plaintiff[3] for a traffic violation. (Doc. 16, at 5). Plaintiff was experiencing an altered mental state, which Plaintiff states was immediately apparent and that a history of mental health issues was known by "local police." *Id.* Plaintiff told the officers he needed

---

1. Defendant Officer Donald J. Kreager, Jr., a police officer for the Genoa Police Department, filed the first opposition. (Doc. 56). Defendant Officers E. Sandwisch, S. Gable, and A. Webb, and Sargeant J. Martin, police officers for the Oregon Police Department, then joined in Defendant Kreager's Opposition and incorporated such into their own opposition. (Doc. 58, at 1). These opposing Defendants are collectively referred to as "Defendants" herein.

2. The facts in this section are taken from Plaintiff's First Amended Complaint.

3. Plaintiff Mark Silva, Jr. filed this case on behalf of his late father, Mark Anthony Silva, who is also a named Plaintiff. For clarity, Mark Anthony Silva is referred to as "Plaintiff" herein.

medication, and EMTs transported him from the traffic stop location to St. Charles Hospital in Oregon, Ohio. *Id.* Kreager followed him to the hospital. *Id.*

Upon Plaintiff's discharge, Kreager handcuffed and escorted him to a police car in the hospital parking lot. *Id.* In Plaintiff's "altered mental state," he "meandered away" from Kreager in the parking lot; Kreager told him to stop and deployed his taser twice, causing Plaintiff to fall to the ground. *Id.* Kreager then "yanked" Plaintiff up and toward the ambulance bay. *Id.* at 6. Plaintiff stopped walking when he reached the sidewalk, and Kreager responded by "taking [him] down onto the sidewalk with force." *Id.* Kreager called for backup, continuing to restrain Plaintiff and push on his head, neck, and chest while Plaintiff repeated: "I'm gonna die." *Id.* Defendants Sandwisch and Gable then joined in restraining Plaintiff. *Id.* While pushing down on Plaintiff's head and back, Sandwisch struck Plaintiff's body with his knee before "yank[ing]" his cuffed wrists over his head and kneeling on his forearm while Kreager "climbed on top of [Plaintiff] and pushed down on his back." *Id.* The First Amended Complaint continues to detail violence to Plaintiff by Kreager, and states Defendants Webb and Martin also joined in the restraint efforts against him. *Id.* at 6–8.

Plaintiff eventually went silent and stopped moving. *Id.* at 8. Officers continued to hold him down and re-cuffed him before turning him over to see his lips had turned blue. *Id.* Approximately two minutes after Plaintiff had gone silent, Kreager asked if he should start chest compressions; no officer attempted chest compressions, CPR, or called 911. *Id.* at 9. Medical personnel at the hospital were notified, but Plaintiff alleges they lacked appropriate urgency. *Id.*

Plaintiff filed his Original Complaint on September 11, 2024, alleging excessive force, deliberate indifference to serious medical needs, failure to intervene, assault and battery, and reckless breach of duty against the Defendant Officers; medical malpractice against the medical

2

personnel Defendants; and negligence against the hospital Defendants. *See* Doc. 1. On October 18, 2024, Plaintiff filed his First Amended Complaint, adding the true identities of the then-John Doe Defendants. (Doc. 16).

Plaintiff now requests leave to file a Second Amended Complaint to add the Village of Genoa, Ohio (the "Village") and the City of Oregon, Ohio (the "City") as new party Defendants, thereby including them in the existing constitutional claims. The proposed Second Amended Complaint further adds an eighth cause of action explicitly alleging *Monell* liability and includes "allegations reflecting the newly-discovered facts" Plaintiff claims justify amendment. (Doc. 55, at 7).

### STANDARD OF REVIEW

After amending a pleading once, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court should "freely give leave when justice so requires." *Id.* "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). An amendment is futile "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

3

**DISCUSSION**

Plaintiff seeks leave to file a Second Amended Complaint, which adds claims against two new parties, the Village of Genoa and City of Oregon. (Doc. 55, at 1). Plaintiff seeks to add these new parties as Defendants to his existing constitutional claims, allege a stand-alone *Monell* liability claim against both municipalities, and include the newly discovered evidence in those claims' factual bases. *Id.*; *see* Doc. 55-1; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff contends he brought this Motion as soon as reasonably practicable upon new evidence found during discovery. (Doc. 55, at 1).

Defendants oppose. *See* Docs. 56, 58. First, they argue undue delay, citing the extensive discovery efforts already undertaken. (Doc. 56, at 4). Second, Defendants contend Plaintiff repeatedly failed to cure deficiencies in his Complaint, citing the "notice" Plaintiff received of these purportedly new claims through an affirmative defense in Defendant Kreager's Answer to the First Amended Complaint. *Id.* at 5–6. Third, Defendants argue allowing amendment would result in undue prejudice. *Id.* at 6–8. Finally, Defendants claim amendment would be futile. *Id.* at 8–9; Doc. 58. The Court discusses each argument in turn and concludes Plaintiff shall be permitted to amend.

Undue Delay

Defendants claim Plaintiff's request for leave to file a second amended complaint was unduly delayed. (Doc. 56, at 4–5). They note the request comes nearly a year after the First Amended Complaint's filing and that discovery was already "largely under way." *Id.* at 4. Defendants particularly take issue with the fact that representatives of both proposed new parties have been deposed for "extended periods of time," the hardships associated with re-deposing them, and that Plaintiff cites no authority supporting re-deposition. *Id.* at 4–5.

4

In analyzing whether there has been undue delay, this Court must "weigh the cause shown for the delay against the resulting prejudice to the opposing party." *Johnson v. Ventra Grp., Inc.*, 1997 WL 468332, at \*2 (6th Cir.) (citing *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 873 (6th Cir. 1973)). "Delay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 409 (6th Cir. 2000) (citing *Moore v. City of Paducah*, 790 F.2d 557, 559–62 (6th Cir. 1986)); *Tefft v. Seward*, 689 F.2d 637, 640 n.2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a permissible reason, in and of itself[,] to disallow an amendment of a pleading.").

Defendants argue prejudice would result from the costs, travel, missed work, stress, and inconvenience associated with re-taking depositions and continued litigation. (Doc. 56, at 4–5). But Plaintiff maintains any additional discovery will be "extremely limited in scope," and has stated no intent to re-depose the municipal representatives. (Doc. 55, at 10; Doc. 60, at 2). And at the time the Motion was filed, discovery remained open for nearly two more months.[4] *See Osborn v. Griffin*, 2013 WL 12176849, at \*2 (E.D. Ky.) ("[A] defendant's claim it would have to bear the expense of conducting a second round of discovery, including re-deposing the plaintiff, was insufficient prejudice to deny the motion for leave to amend the complaint, which was filed while discovery was ongoing.") (citing *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951–52 (6th Cir. 1987)). Additional discovery under these circumstances does not amount to prejudice. *See Verragio, Ltd. v. Signet Jewelers Ltd.*, 2021 WL 4813279, at \*4 (N.D. Ohio) ("[C]ourts have found [] the defendant suffered little or no prejudice if the alleged prejudice is merely the 'additional

---

4. While those deadlines have now passed, the Court extended discovery while Plaintiff's Motion was pending and, as discussed below, case deadlines will be further reset to accommodate additional required discovery. *See* this Court's non-document Order dated January 5, 2026.

expense and inconvenience of defending against [the] new claims' or if 'the dates for discovery cut-off . . . ha[s] not yet . . . elapsed.") (internal citations omitted). Further, Plaintiff offers sufficient cause for the delay—he required discovery to be able to plausibly state the claims he now wishes to add.

Thus, the Court finds there was no undue delay in the filing of Plaintiff's Motion for Leave to File Second Amended Complaint.

Repeated Failure to Cure

Defendants next contend Plaintiff has had notice of a potential *Monell* claim since the filing of Defendant Kreager's Answer to Plaintiff's First Amended Complaint because it raised an affirmative defense grounded in the reasoning of *Monell*. *See* Doc. 56, at 5 (citing Doc. 18, at 4) (noting Defendant Kreager's fourteenth affirmative defense states "[t]here was no policy, custom, or practice that resulted in any constitutional violation of Plaintiff's claims"). Defendants argue prior notice of such a deficiency is a "critical factor[] in determining whether an amendment should be granted." (Doc. 56, at 6) (quoting *Pittman v. Franklin*, 282 F. App'x 418, 425 (6th Cir. 2008). But Plaintiff asserts he did not have a sound factual basis to assert these claims prior to completing the depositions on September 29, 2025, and October 7, 2025. (Doc. 55, at 4–6; Doc. 60, at 5). He argues any earlier attempt to amend would have failed under Federal Civil Rule 8, as he first gathered enough factual support to plead a viable *Monell* claim during discovery. *See* Doc. 60, at 5. The Court agrees.

Discovery often provides the factual development necessary to move a *Monell* theory into the realm of plausibility. *See King v. Blackhawk Recovery & Investigations, LLC*, 2017 WL 5992367, at *3 n.3 (E.D. Mich) (noting, after dismissing a *Monell* claim, "[d]iscovery or other avenues may yet reveal facts that would support *Monell* liability; if so, [plaintiff] may seek leave

to amend to add such a claim") (typeface altered). Even if Defendant Kreager's Answer arguably signaled *Monell*-related issues, it did not provide Plaintiff with factual material to state a viable municipal liability claim. And courts have left open the opportunity to amend where discovery provides the facts necessary to state a plausible *Monell* claim. *See Pierce v. Bailey*, 2023 WL 11892358, at *1 (W.D. Mich.) ("Plaintiff may seek to amend at a later date with sufficient allegations if discovery reveals a plausible basis for a *Monell* claim.").

Thus, the Court finds Plaintiff did not repeatedly fail to cure deficiencies in the First Amended Complaint so as to preclude his Motion for Leave to File Second Amended Complaint.

Undue Prejudice

Defendants' argument of undue prejudice largely echoes that of undue delay. They expand on their argument regarding the hardship they may face in expanding discovery to include the *Monell* claims. (Doc. 56, at 7). But the cases relied upon are not on point; they are composed of circumstances in which those courts initially found undue delay. *See, e.g.*, *id.* at 8 (citing *Johnson v. City of Detroit*, 2008 WL 4940589 (E.D. Mich.) (denying a plaintiff's request to amend when it was submitted over a month after all discovery deadlines ended and the court found undue delay)). And, as discussed *supra*, this Court not only finds no undue delay in the filing of the present Motion, but also the hardships Defendants cite are inflated given Plaintiff's narrow and limited requests.

Thus, this Court finds no undue prejudice which would require denial of Plaintiff's Motion for Leave to File Second Amended Complaint.

Futility

Defendants' final argument is that amendment would be futile. (Doc. 56, at 9; Doc. 58, at 1–7). An amendment is futile if, even with the proposed changes, the complaint fails to state a

7

claim under Rule 12(b)(6). *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024). Because the 12(b)(6) standard is used to analyze futility, this Court construes Plaintiff's Motion liberally in his favor and accepts all factual allegations and permissible inferences as true. *See Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co.*, 538 F. Supp. 2d 1032, 1034 (N.D. Ohio 2008). A claim cannot withstand a 12(b)(6) motion to dismiss if it "fail[s] to state a claim upon which relief can be granted." *Id.* Defendants make several arguments as to why Plaintiff's new claims would not survive this analysis. *See* Docs. 56, 58. For the reasons set forth below, the Court finds those arguments unpersuasive.

The Second Amended Complaint includes two new parties, the Village and the City. (Doc. 55-1, at 4–5). It states the Village of Genoa was the employer of Defendant Kreager and the City of Oregon was the employer of Defendants Sandwisch, Gable, Webb, and Martin. *Id.* It also asserts these municipal entities are "responsible for the policies, practices, customs, training, and supervision of their respective police departments," which included the care and treatment of Plaintiff. *Id.* at 12. It further adds allegations regarding the entities' review and ratification of Defendants' conduct, the lack of adequate policies as to pertinent risks and tactics, and the failure to provide proper practices, customs, training, and supervision to its officers. *See id.* at 12–13. It contends these failures and deficiencies "encouraged" and were the "moving force" behind Defendants' acts, and names the City and Village as Defendants to four Counts: (1) Count I for excessive force; (2) Count II for deliberate indifference; (3) Count III for failure to intervene; and (4) a new Count VIII for *Monell* liability. *See id.* at 14–20.

Plaintiff's claims against the Village and City under 42 U.S.C. § 1983 for excessive force, deliberate indifference, and failure to intervene are based on his allegation that those entities "were the moving force behind" the officers' violations of Plaintiff's rights, and thus subject to *Monell*

liability for them. (Doc. 55-1, at 14–16). The facts incorporated to support these three counts are those stated relating to policy, custom, ratification of officer actions, and training. *See id.* Count VIII, Plaintiff's *Monell* claim, which also falls under § 1983, specifically alleges Defendants' unconstitutional actions were made "pursuant to one or more interrelated de facto policies (written and/or unwritten), practices, customs, supervision of officers, and tolerance and ratification in the police departments of the" Village and City. *Id.* at 19–20.

In *Monell* and subsequent cases, the Supreme Court has "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "To prevail on a claim against a municipality under § 1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the [municipality]'s responsibility for that violation." *Houpt v. City of Cleveland*, 2013 WL 6330905, at *2 (N.D. Ohio). "[T]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* As Defendants note, a municipality is not subject to liability under § 1983 on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691; *see* Doc. 56, at 9; Doc. 58, at 1–2. But Plaintiff does not bring his claims under such a theory. (Doc. 60, at 8).

There are four avenues a plaintiff can use to prove a *Monell* claim: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429

9

(6th Cir. 2005). Defendants' remaining arguments target the Second Amended Complaint's ability to adequately state a claim under any of those avenues, but, as discussed below, the Court finds the proposed amendments provide enough support for § 1983 claims such that they are not futile.

Defendants contend policies under *Monell* cannot be established by a single instance of alleged misconduct. (Doc. 58, at 2, 3). And while that is true when a single act serves as the sole basis for liability under *Monell*, Defendants fail to provide any meaningful argument or analysis as applied to this case. *See id.* The Second Amended Complaint contains allegations not just of the single instance of misconduct in question, but also of lack of pertinent policies, lack of proper guidance as to other policies and practices, inadequate training and supervision, and tolerance and ratification of misconduct. *See* Doc. 55-1, at 12–14. As detailed below, these additional allegations support a plausible *Monell* claim.

Defendants also contend Plaintiff's factual allegations do not support a ratification theory. The Second Amended Complaint asserts both police departments ratified unconstitutional conduct through their investigation and response to this incident, and their failure to discipline Defendants is evidence of tolerance for such tactics and actions. *See* Doc. 55-1, at 13. But Defendants assert "[r]atification must precede the illegal act and resulting injury." (Doc. 58, at 3). And they are correct that such circumstances cannot be the sole basis forming *Monell* liability. The Sixth Circuit has held "[a] plaintiff can establish municipal liability by showing that the municipality ratifies the unconstitutional acts of its employees by failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020). But "a local government's failure to investigate the plaintiff's claim cannot alone be the basis of *Monell* liability—a faulty *post hoc* investigation can never be the cause of an injury that already occurred." *Palma v. Johns*, 2022 WL 4080629, at *4 (N.D. Ohio) (citing *Smith v. City of Troy*, 874 F.3d 938,

10

947 (6th Cir. 2017)). "To establish *Monell* liability for ratification based on a failure to investigate, a plaintiff needs to show '"not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances.'" *Hart v. Michigan*, 138 F.4th 409, 425 (6th Cir. 2025) (quoting *Pineda v. Hamilton Cnty.*, F.3d 483, 494–95 (6th Cir. 2020)). Plaintiff cites only a single incident (his own) in attempting to establish *Monell* liability under this ratification theory. *See* Doc. 55-1, at 12. This is insufficient.

But while Plaintiff has not plead enough for *Monell* liability under a ratification theory, he is still permitted to use the alleged failure to discipline Defendants' and the ratification of their conduct as evidence in support of a defective policy theory. *See Otero v. Wood*, 316 F. Supp. 2d 612, 627–28 (S.D. Ohio 2004) ("[E]vidence that a municipality inadequately investigated an alleged constitutional violation can be seen as evidence of a policy that would condone the conduct at issue.").

Defendants argue "case law does not call for the non-existence of a pertinent policy" to form a basis for *Monell* liability. (Doc. 56, at 9). But municipal liability may arise from the absence of a necessary policy where such omission plausibly caused constitutional injury. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004) (reversing a district court's grant of summary judgment where "the record presents an issue of fact regarding the total lack of any County policies, practices, and adequate training for this type of constitutional claim, and regarding whether the harm complained of resulted from the County policies, or lack thereof."). And Plaintiff alleges both police departments lacked policies governing prone restraint, on-ground restraint, and positional asphyxia. *See* Doc. 55, at 12. Plaintiff also alleges Defendant Officers received no policy guidance addressing how to use those tactics or the risks and limitations associated therewith. *Id.*

11

Plaintiff further alleges each police department's "Use of Force" policies failed to instruct officers on the "improper or unlawful use of prone and/or on-ground restraint and tactics that present risk of positional asphyxia, despite officers' recurrent use of prone restraint and on-ground restraint, and through such restraints, positional asphyxia, and related uses of force present an obvious potential for injuring subjects and violating their rights." (Doc. 55-1, at 12–13). At this stage, those allegations plausibly support an inference that a known use-of-force tactic carried obvious constitutional risk without written safeguards or operational limits. *See Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 229 (D.N.J. 2000) ("It is well established that in § 1983 suits, a municipality may be held liable for *not* having in place a policy that is necessary to safeguard the rights of its citizens, or for failure to act where inaction amounts to deliberate indifference to the rights of the persons affects.").

Defendants further argue Plaintiff cannot establish *Monell* liability from a single instance of unconstitutional conduct on a failure-to-train theory. *See* Doc. 58, at 3, 5. But there is no rigid requirement for multiple prior incidents before a *Monell* claim may proceed under such theory. Instead, Plaintiff correctly states the relevant inquiry centers on notice and deliberate indifference. (Doc. 60, at 10). "*Monell* claims made under a 'failure to train' theory do not necessarily require Plaintiffs to allege more than one instance of misconduct." *Rolen v. City of Cleveland*, 2013 WL 12145960, at *4 (N.D. Ohio) (citing *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 562–63 (6th Cir. 2011)). Plaintiff may "show deliberate indifference through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Harvey*, 453 F. App'x at 562–63. Plaintiff maintains both Police Departments failed to supervise officers in

12

their use of prone restraint and related tactics, and failed to address practices, customs, or unwritten policies involving misuse of those techniques. (Doc. 55-1, at 13).

A single incident may only support a failure to train theory "'in a narrow range of circumstances' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 903 (6th Cir. 2018) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015)). As the Sixth Circuit explained:

> [T]he Supreme Court has left open the possibility that a plaintiff might prove deliberate indifference using only the single incident of unconstitutional conduct against the plaintiff. If the need for a certain type of training is sufficiently "obvious," the Court reasoned, the failure to provide the obviously needed training "could properly be characterized as 'deliberate indifference' to constitutional rights."

*Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (internal citation omitted) (quoting *Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)).

Here, Plaintiff contends that where a municipality places officers in situations involving prone restraint, positional asphyxia, and other use of force decisions without meaningful guidance, one serious constitutional violation may itself expose an obvious training failure. (Doc. 60, at 10). And the constitutional risk associated with prone restraint has long been recognized. The Sixth Circuit has concluded:

> [It is] clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force. . . . Creating asphyxiating conditions by putting substantial or significant pressure, such as body weight, on the back of an incapacitated and bound suspect constitutes objectively unreasonable excessive force.

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004).

Plaintiff asserts both Police Departments failed to provide officers meaningful guidance on prone restraint, on-ground restraint, and positional asphyxia despite placing officers in situations where such use of force decisions predictably arise. *See* Doc. 55, at 6. Plaintiff alleges both Police Departments provided no meaningful policy or training on prone restraint despite the recognized constitutional danger associated with such force, and failed to supervise officer use of those techniques. *See* Doc. 55-1, at 13; Doc. 55, at 6. Because officers routinely confront physical restraint situations, and because prone restraint presents a known risk of serious constitutional harm, Plaintiff plausibly alleges an obvious need for training. At this stage, those factual allegations support a plausible *Monell* claim under a failure to train theory even where Plaintiff identifies only one instance of allegedly excessive force. The Court therefore finds futility is not a basis to deny leave to amend.

In sum, this Court finds no sufficient reason to bar amendment and grants Plaintiff's requested leave to file his Second Amended Complaint *instanter*.

Joint Motion to Stay (Doc. 65)

Following full briefing on the above Motion to Amend, Plaintiff filed a Notice of Suggestion of Death stating that Plaintiff Mark Silva is deceased. (Doc. 64). A later filing states the family is in the process of opening an estate and having an administrator appointed. *See* Doc. 65, at 1. The parties thus jointly move the Court to stay the case until such time as the estate's administrator is appointed and can be substituted as Plaintiff in this action. (Doc. 65). The parties further request that, at that time, they be permitted to propose new case management deadlines.

The Court grants the parties' Joint Motion. All current case management deadlines are vacated and this case is stayed until June 30, 2026 at which point the Court will conduct a telephone status conference.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 55) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that the parties' Joint Motion to Stay (Doc. 65), be and the same hereby is, GRANTED and this case is STAYED until June 30, 2026; and it is

FURTHER ORDERED that a Telephone Status Conference is set for **June 30, 2026, at 2:00 p.m.**


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: April 17, 2026

15